Good morning, may it please the Court, I'm Sean Andrews, here from Duke Law School's Appellate Clinic. Clinic students appointed amicus counsel in support of Appellant Michael Norwood in this appeal. Clinic students entered appearance as a student counsel for this appeal, and I am pleased to introduce one of them, Beresford Clark, to present the oral argument this morning. Thank you. Thank you. Mr. Clark, welcome. May it please the Court, good morning, Your Honors, my name is Beresford Clark, amicus counsel appearing on behalf of Michael Norwood. With this Court's permission, I'd like to reserve two minutes of my time today for rebuttal. Granted. Michael Norwood's restitution liability expired on May 30th, 2017, therefore the subsequent order of the District Court in this case granting the government's turnover motion is invalid and should be reversed by this Court. This Court's appointment order identified four primary issues in this case, three of those issues remain disputed, and I hope to address them today in the order raised by the government in its brief, beginning first with the question of whether the entry of Mr. Norwood's 2013 amended judgment commenced a new 20-year liability period under the VWPA in concluding with the ex post facto issue. The amended judgment issue, Your Honors, turns, in our view, on one question of statutory interpretation, and that is, to which judgment is Congress most sensibly understood to refer in section 3613A of the VWPA when it provides that the entry of the judgment creates by the government two decades to enforce. On this issue, our central point is simply this, where a defendant's original judgment establishes or ascertains his restitution liability, and that liability is merely reimposed in a subsequent amended judgment, it simply could not have been Congress's intent that the entry of that amended judgment would give the government two additional decades to enforce the same restitution liability. Well, what was the effect of our January 2013 decision that vacated the sentencing order? If we vacated it, it goes back for de novo resentencing, how can that not be a new judgment? Your Honor, we read the vacater of the sentencing order to essentially roll back the limited relief that the district court provided in the 2255 case in his sentencing order, essentially restoring Mr. Norwood to the shoes that he occupied before he filed the 2255 motion, but really the question in this case is not whether the 2013 amended judgment is a new judgment. The question is whether Congress, in providing that the 20-year period commences upon the entry of the judgment, is referring to the current judgment in every case, or whether it's more natural to interpret that phrase to refer to an original judgment. So let's just say, let's take it out of the restitution context and let's just talk about it in terms of sentencing for terms of imprisonment. If there is an original sentence for terms of imprisonment that goes for, say, let's just go 100 months, and let's say that a defendant serves 30 of those months, has a successful appeal around that time, and it's returned for a new sentence, and the district court gives a new sentence and says, aha, you know, I've realized all these things, I forgot to consider something, but now I'm going to give you the exact same 100-month sentence. We wouldn't restart that 100-month sentence there, but we would say that it's a new judgment, and we'd give you credit for the 30 months that you served. And so we would recognize it to be a new legal event that had new legal significance. It would be error if you didn't account for the things that happened beforehand, probably, but it doesn't mean that that second judgment has no value. And so it seems to me that your position, there's a choice. We've got multiple judgments. We have to pick which one works, and it's just a lot more common in this context to go with the most recent one. Why is this an exception to that? Your Honor, I think that Congress, in enacting the VWPA, clearly intended to give the government one period of time to enforce restitution liens, one 20-year period of enforceability. And so I think that the phrase, the entry of the judgment, must be understood in light of the context and the purpose that Congress was attempting to achieve. So let me just follow up on that, because the first hypothetical I gave you wasn't about restitution. It was entirely about sentencing and length of imprisonment. But let's just say that the amount of restitution varied between the two judgments. So let's say there was a first judgment of restitution for $10,000, government appealed to something like this. And then there's a second order of restitution for more. Would it be your position that because Congress can only refer to one, and it should refer to the first one, that the 20-year period for collecting that $20,000 started when the $10,000 judgment started? Your Honor, I think that's the most difficult case. But I think this Court would be justified in interpreting the VWPA to provide the government with one 20-year period, although I could see an interpretation where the government would have additional time to pursue additional funds that it didn't previously have noticed that it could go after. But I would still say that because Section 3613B clearly contemplates one fixed period of liability, that even in that case, the 20-year period would run from the original judgment. And I think it's because Congress, in imposing this 20-year period, did not intend for it to potentially fluctuate in every case. So the effect of the government's interpretation in this case is to effectively transform what is clearly a 20-year period imposed by statute into a 36-year period in this case. And that fluctuation could potentially occur in every case. Well, you could... Go ahead. Let me ask the question this way. It seems there's a substantial amount of evidence that Congress, in amending the statute, was very dissatisfied with the way restitution was being collected under the previous more discretionary act. Why would they have wanted to perpetuate a scheme for restitution that they found was not serving the purpose that restitution was supposed to serve? If Your Honor is referring to the MVRA, which made restitution mandatory, what we're interpreting here is the VWPA, the pre-existing regime, Section 3613A of the VWPA, because it is our position that the MVRA cannot be applied in this case consistent with the ex post facto clause. And so I think to the extent that Congress did strengthen collection procedures in the MVRA, that sheds little light on the question here, which is what Congress did when it enacted the VWPA. And our position is simply that Congress meant what it said in Section 3613B when it provided that liability would persist for a fixed 20-year period of time. Well, I think Judge Stearns' point to the – where Congress has effectively told us with the passage of the MVRA that what they would like to see is as much compensation up to the full amount of restitution to a victim as possible. When we look back at the VRMA with the term judgment, and we're trying to ascertain if we look to the first judgment or whether subsequent entries of judgment that that – whether that can restart the clock, why shouldn't we take an interpretation that's more consistent with achieving full compensation for victims? Your Honor, I think – I think the relevant intent in this case is the intent of the Congress that enacted the VWPA. And so I don't think that the dissatisfaction of the Congress that enacted the MVRA should shed light on this question. I think that subsequent legislative history that bears little – I mean, maybe your point's even stronger. Maybe you would say because there was so many problems with the VWPA, such as picking the first single judgment as opposed to a second one, that's what led to the MVRA. It might sharpen your point. Your Honor, we don't have much evidence in the record on – Nothing on it. It's an inference. Yeah. It's nothing more than an inference. So we direct your attention to our recent decision in LESCO. And obviously, there's been some earlier briefing on the Magwood issue. In that context, we look to the term judgment to be the last judgment, that taking the Supreme Court at its word that each time a new judgment is entered, a new sentence with even a modification to it, that constitutes a new judgment. Why shouldn't we import that logic here? Well, I think the context of habeas corpus is very different because, as LESCO made clear, an applicant under AEDPA can only challenge his custody pursuant to a state judgment. And continued custody is only justified by the combination, as this Court pointed out in LESCO, of a defendant's count of conviction and the sentence on that count. And so necessarily, for a defendant to challenge his current custody, he must challenge his current judgment. And so I think that Magwood, LESCO, and Romanski follow from unique features of the habeas context that, again, don't really port over to the ends that Congress was attempting to achieve with the DWPA. Let's look specifically at what the confines are for a habeas petition because it raises the question about what authority there may be. Another question that we put to the parties to be prepared to address as to both our decision in 2013 and the District Court's decision in reimposing a sentence, do we have authority under 2255, that is the federal courts have authority, to impose a new order of restitution? Your Honor, I think this Court could take the position that it does not. I think Smullen and Segler stand for the proposition that for a defendant to file a claim under Section 2255, he must effectively seek release from custody. I do think it would be odd if a court could issue precisely the kind of release that a defendant cannot request in a 2255 motion. That being the case, in preparation for this oral argument, we had trouble exactly identifying how that fact would affect the scope of this Court's remand order, which was issued on January 25th of 2013, specifically because I think the record makes it clear that the parties at the time understood that they were requesting a de novo resentencing. Mr. Norwood filed a motion requesting a de novo resentencing in the District Court. The government, on appeal, filed a motion seeking a summary reversal and remand for the motion that this Court granted. The question really is the vacateur of the restitution component of the sentencing, something that we had any authority to touch. You pointed us to cases where custody was not at issue in 2255, it's restitution order standing alone, and we know, and you have already addressed, that there's not the ability under the habeas statute, we don't have authority to entertain that sort of claim. But here, it was a combined claim, challenging custody and resulting in a different sentence with this financial component to it, that standing alone might be a problem, but in combination, is it still, or were we saying, in other words, that we were vacating custody vacating the entire sentence, including the restitution, or was that outside of our power to touch? Your Honor, I think it very well may have been outside of the power of this Court to touch. Based on the context of the time and the motion that this Court granted, it does seem that the Court was granting a de novo resentencing, and I'm not aware that de novo means anything other than every component of a sentence is on the table. But, so I'm not, this is why I said we were struggling to ascertain precisely how this perhaps lack of jurisdiction would reach backwards and affect the scope of the remand, if in fact, as the record suggests, this Court granted a de novo resentencing. I see my time has run out. Let me just ask one more question, it seems somewhat important to me. The government makes the argument that, all right, let's assume the WPA applies, nonetheless the enforcement proceeding had begun before, by your argument, the statute of limitations ran. What makes the WPA a statute of repose? I mean, what's wrong with the government's argument that it's enough that we begin the enforcement proceedings within the 20 years allotted? Your Honor, I think your question is answered by the text of Section 3613B, which does not provide the government with 20 years within which to commence or initiate enforcement proceedings, rather it specifically states that the liability itself extinguishes after a fixed period of time. The hallmark of the statute of limitations typically is that the statute specifically states and identifies a litigant who must commence some legal action within a specified period of time, and the implication is that by timely initiating that action, the litigant can litigate that legal issue to its conclusion. Section 3613B is fundamentally different, and we cited it on our brief to examples of statutes of limitations at the same Congress that enacted the VWPA, enacted as well, and the text is just markedly different. I understand your answer, but, and this is not a trick question because I'm not certain of the answer myself, let's assume, because I think what Congress had in mind was a civil judgment, where the 20 years came from. What would happen in a civil proceeding if someone was attempting to enforce a civil judgment, you know, files for recovery a month before the 20 years expires? Are you saying that action dies? Well, Your Honor, I think the answer depends on the text of the statute, but our brief does cite to a number of judgment lien statutes in states that do deal with civil judgments, and where the text of those statutes is phrased similarly to Section 3613B, courts have held on occasion that the defendant cannot, even if they timely file a foreclosure action, they cannot litigate the foreclosure action to its conclusion, even at least where the statutory period expires during the pendency of the enforcement proceeding. So, but let's, so let's just say that this statute is best read as a statute of repose, as opposed to a statute of limitations. Is the extension of a statute of repose, lengthening a statute of repose, punitive? Well, Your Honor, I think the question under the ex post facto jurisprudence of the Supreme Court is whether the application of the, or whether the statute itself is penal. I don't know if it's, I don't think it's a provision specific inquiry. I believe it's a... It's an as applied inquiry. Yes. And so, as applied inquiries tell us that maybe we need to look at individual facts and the individual parts of a statute that bear most heavily on those facts. So, if we say that the biggest part of the statute that bears on your client's interest is the statute of repose provision, the question is, is that penal? I would say it is, Your Honor. I think that Congress in extending the period, this kind of goes to the context of the MBRA, was dissatisfied with the regime that existed before. And I think the intent of extending the period was to squeeze as much restitution out of... But to tease that out, as Judge Stearns wanted to use the analogy of a civil context, if there were a statute of repose for architect liability and they build buildings, they always want repose, especially this building, which had some trouble when it was constructed, I understand. But what if that was extended? What if a 20-year statute of repose for architect's liability was extended to 30 years, midway through or 15 years through? Would that be able to be challenged as penal? No, Your Honor. That would be a non-penal... That would simply be... Well, I think the question is whether Congress in imposing a provision like that is serving any of the hallmark purposes of criminal punishment, whether that be rehabilitation, deterrence, incapacitation, or retribution. And I would say that the extension of Section 3613B in the context of the statute in which it was enacted, the MBRA, serves at least the purpose of retribution, but also the purposes of deterrence and rehabilitation. I don't think there's anything to this effect in the record, but my understanding is that courts have spoken of restitution in terms of not only the deterrent value that there is in enforcing defendants to internalize the costs that their crimes impose on society, but also that there's a rehabilitation, a benefit to holding defendants to account for the harm that they cause. And so I think, as this Court has held consistently, where a restitution order is imposed in a criminal judgment, it serves penal ends. And I don't think Section 3613B is any different. So there's no question that restitution in the context of a criminal sentence has been deemed punitive by our Court and the Supreme Court. But that portion of the sentence, that is the amount that is due on restitution, is set at the outset. To the extent that notice is the driving concern for an ex post facto claim, there's notice at the very outset of how much is owed. Why is extending the period of collection? What is it about that that extends punishment in your view? Well, I think that by extending the liability period, it, especially in this case, necessarily increases the proportion of the defendant's restitution penalty that the state can compel them to pay. And granted, the ex post facto clause does, is animated by a purpose of protecting reliance interests, but it also serves other interests as well. The ex post facto clause is understood to keep the government in check and to protect disfavored groups from vindictive legislation. And so where Congress in extending, essentially, the period that the state can continue to pursue a defendant's restitution penalty has the necessary effect of increasing the proportion of the restitution penalty that it will ultimately compel them to pay. I'm not following that. The amount of restitution remains the same. So the only thing that is accruing is interest, but we have no problem in the civil area of saying the point is to make the victim whole. That would be true in the restitution context as well. So what is it about that, that anyway changes the fundamental amount that the court is ordered to be paid? Well, I don't think, Your Honor, the touchstone is the sentence meted out to a defendant at sentencing and memorialized in his criminal judgment. I think this court's holdings in Mickens-Thomas and Holmes v. Christie established that what matters is not whether the punishment in the sentence increases. What matters is whether a retroactively applied penal statute presents a significant risk of increasing the proportion of that maximum penalty. A defendant is likely to serve. In the context of parole, even though a defendant's sentence doesn't change, what happens is when a retroactively applied parole policy makes it less likely that that defendant will be released from prison, it increases the proportion of that sentence that the defendant ultimately serves. I don't think it matters that the amount of the restitution remains the same. What matters is what proportion of that restitution penalty the application of Section 3613B in this case, as applied, will compel Mr. Norwood to pay. But, I mean, there is just a huge fundamental difference between period of incarceration and restitution. The only way that a period of incarceration can be satisfied is through time incarcerated. But a restitution judgment can be satisfied at any time. There's no time dependency to it. A very, very wealthy with findable, freezable assets criminal defendant may find that they fully satisfied a restitution award very quickly, whereas others may not. And so it strikes me that Holmes and Mickens-Thomas, they're really looking at something that accounts for Moreno and Garner, which are all parole cases that all are unique to the time dependency of serving incarceration. But there's no time dependency to restitution, since it could be paid day one or day 20 year minus one. Your Honor, I don't think that's true in the aggregate. And our brief cites to empirical evidence that most defendants are indigent at sentencing. And so for defendants who are indigent, the understanding is that their restitution, the amount of restitution they will pay is time dependent. It's the amount that they are likely to end up paying by the end of 20 years. And so I think that there's a clear analogy here, just as a defendant who's sentenced to an indeterminate sentence understands that his likely punishment is cabined by the availability of release on parole, an indigent defendant sentenced to an order of restitution that he is unlikely to be able to pay understands that after 20 years, he can come out from under that liability and he won't pay the full amount of the restitution order. And so I do think there is a time dependency for those that are unlikely to be able to pay. And that's... I understand your argument that having this 20 year period of these obligations hanging over a defendant, and we know that those obligations have a penal character, if we're to double that or more in this case, in terms of the length of it, you see that as increasing the punishment because of that exposure to the debt over the time period. But I want to ask you about some other consequences that go along with an outstanding restitution obligation. Because it appears in several states that if there's still restitutionary liability on the part of a criminal defendant, that there are civil rights that are at stake, including, for example, the right to carry a firearm or to vote or serve on a jury. And that the collection will remain also a term and condition of any supervised release. To what extent are we able to or should we take account of those collateral consequences that go along with restitution liability still being outstanding if the enforcement period is extended an additional 20 or 30 years? Your Honor, I'm not aware of case law considering collateral consequences under the Exposed Factor Clause. We didn't approach the issue from that perspective. You are right that there are a number of important consequences the defendant's supervised release can be revoked and the defendant can be thrown back in prison for willful failure to pay. Section 3663I, I think, of the VWPA suspends the receipt of all federal benefits upon failure to pay. And so there are important consequences. I'm not prepared to say now what relevance they may have under the Exposed Factor Clause simply because we're not aware of any authority on that issue. And I think it would be perhaps difficult to ascertain whether an increase in collateral consequences is an increase in punishment. That's why we chose to pursue the Exposed Factor Issue squarely on the issue of whether the retroactive application of Section 3613B of the MVRA will increase Mr. Norwood's restitution penalty, which this court has held numerous times, constitutes criminal punishment within the scope of the Exposed Factor Clause. It's a difficult question. Isn't the issue is whether disentitlement to a privilege is in fact a punishment? Yes, Your Honor. And it would turn, I'm aware that it's not in the record of the briefs. I'm aware that there are Supreme Court cases that govern whether we label something penal or civil.  But I wouldn't be prepared to take a position on the issue right now. To the extent you haven't had, it sounds, an opportunity to research those issues yet, are you seeking the opportunity to file a supplemental brief addressing those? If it would help the court, we certainly would be willing to. We'll give both parties that opportunity and we can put it on order after argument today. Other questions? No, thank you. Okay, we'll hear from you on rebuttal. Mr. Sanders. Good morning. I'm Stephen G. Sanders, Assistant United States Attorney on behalf of the Appellee of the United States in this matter. May it please the court, I want to go back to the statutory argument because Your Honor's hit on something that dawned on me as I was preparing for argument with the January 2013 order that was issued granting the summary action motion. That was an appeal Mr. Norwood took from the amended judgment in the criminal case. But the order purports to vacate the 2255 order granting a limited resentencing. I know when summary action motions are made and granted on consent, there may be less attention paid to the language of the mandate, but since the parties had sought a de novo resentencing, right, and Mr. Norwood had clearly acquiesced in our request in saying he was right, that he is entitled to one, right, that order should have said the judgment is vacated and the matter is remanded for resentencing. So the order is somewhat at odds with the thing that Mr. Norwood was then appealing, right, because he was appealing from the amended judgment in the criminal case and the relief he was seeking. But there's a separate order and judgment, right? Correct. There's an order in the 2255 action, which is a separate civil action, and then there's an amended judgment entered in the criminal action. And the judgment is still labeled amended judgment. Correct. As it would be if there had been a formal statement in the mandate saying vacate the judgment and go back, it would still be labeled an amended judgment after those remand proceedings. But I understood Mr. Clark to say that, I mean, he agrees that the parties sought and this court granted a de novo resentencing, and we view that as an extremely significant point here for the argument that we started a new 20-year period. Whatever the parties might agree to, we can't grant any relief that we're not authorized, we don't have power to grant, right? That I agree with. So then speak to the cases and the issue that we put to you in the notice, where we have a petition that is coming from someone who is in custody, so it's challenging custody, but also has a restitution component. Does the line of cases that says we don't have authority on the habeas to address restitution per se, does that still come into play? I don't believe it does. I agree that a prisoner in custody is simply challenging restitution or a fine, it's not challenging custody for 2255 purposes. But the relevant question here is what does 2255 be, which is the provision that authorizes a court to grant relief. What does relief mean once a claim that satisfies 2255A, right, in custody in violation of the laws of the United States, what relief is a court, district court or court of appeals authorized to issue? And we have always understood, going back to Davis, which was a case issued in the, you know, in the fallout after Bailey, right, when it narrowed 924C, that a district court can go back and not just revisit the custody components of the sentence, but revisit the entire thing. In other words, we've always understood the wipe the slate clean theory for, it comes from Peppers, to apply not just on direct appeal, but on 2255 when a de novo sentencing is sought and granted. Otherwise, I can tell you this, if restitution had not been reimposed in the judgment and the government attempted to enforce its restitution, the obligation that was imposed in a previous judgment, on the theory that amicus is now putting forward, that that liability remained in place all along because it wasn't disturbed, you can bet Mr. Norwood would have said there's no valid judgment out there for you to enforce. So clearly, I mean, while I can't point to anything in this court's January 2013 order that vacated everything, the fact that this court agreed to grant the de novo resentencing and the district court entered an amended judgment means at some point, the previous judgment and all its components were wiped away and a new judgment was put in its place. What significance does the restitution order itself have? We're told under the VWPA that what happens with restitution is it immediately gives rise to a lien and that lien remains in place until it is set aside, vacated, or becomes unenforceable. So given that a lien, as a matter of due process, represents a property interest, how should we think about the status of that lien when there is an amended judgment, a resentencing, with the district court saying that it's not making any changes to those aspects of the judgment, including restitution? Does the lien remain enforced? I believe it doesn't because restitution is a component of the sentence, right? I know that the 3613A distinguishes between the judgment and then it refers to the liability. So it uses two different words, but I think the understanding of Congress at that time was that all components of the sentence merge into a final judgment. It would be a different story if the law required a district judge to issue like four different judgments, one for the custody portion, one for supervised release, one for restitution, one for fine. And you could see a way in which the restitution part could stay in effect, even though the custody judgment is vacated. So let me just tease this out. In the interregnum, right, between the two judgments, or the vacatur of the first judgment and then the imposition of the second judgment, could the government collect on a restitution award in that period? Could it collect on the first restitution award? I don't think so. But it could keep a person incarcerated during that period. Well, it could. I mean, if there are charges pending, right, we can oppose bail for those people. But if the judgment containing the restitution obligation has been vacated, there is no judgment to enforce. Like I said, I think if... So if there's a seven-month period between when the Court of Appeals vacates the judgment and when the new judgment happens, it's your position that it would be beyond the government's power to collect on a prior restitution judgment award, perhaps by taking out of a prisoner's inmate's account. And if that happened, that would have been error. That's right. But I'll give you this caveat. We would, at least certainly in the NDRA, if that were to happen and there were assets that were in play that might be refunded, we would certainly apply for pretrial restraints in advance of a retrial so that those assets couldn't be alienated if they were available for restitution. But certainly, I don't think we... So you wouldn't let someone just spend them. Correct. Yeah. Correct. Can you speak to, as a practical matter, when the lien arises, say the government had identified real estate that Mr. Norwood owned and the restitution order under the terms of the VWPA allows for this lien to arise. Does the government actually go and file a lien? Yes. Under the terms of the statute, both before and after, one of the provisions, I don't have a record of whether it was A or D because they've been reordered, but there is a process by which the government files notice of its judgment lien to make sure it has super priority as against innocent third parties. We, by law, have a super judgment lien because it has the same effect as an IRS lien and that's the best lien you can have. And that's about the county? Yes. Okay. And when a judgment, when a sentence is vacated and there's resentencing scheduled, does the government withdraw that lien or does that lien remain in place? I don't know the answer to that question and that's something I will, if the court wants, put to my financial litigation unit people. But I know of occasions where litigants have found the existence of a lien or a cloud on title where there shouldn't be and they will notify our office and we will immediately take steps to either file a satisfaction or to withdraw that cloud. I don't know what happens, in your specific question, what happens if there is the filing of that notice and then for some reason judgment's vacated but there's contemplated further proceedings in that case. And I want to just go back for a moment to the question about our power to vacate a restitution component and a district court's power for that matter to alter a restitution order, at least where the basis for liability has not changed. Is it the government's position that if someone is not in custody and they are challenging the restitution order under 2255, that in that circumstance the federal courts don't have power to address it? It's outside our jurisdiction. That's correct. That's not cognizable. But if they're in custody and they raise a challenge to restitution, in that circumstance the federal courts in the government, do you do have jurisdiction? I believe so. And I think that arises not just from a combination of 2255B, which sets out the relief that can be ordered, right, resentencing, correction of the sentence. There's I think four listed in 28 U.S.C. 2255B. But then also under 28 U.S.C. 2106, if I'm remembering correctly, which is gives general power to the courts of appeals to remand and to do as they think is necessary in a particular case. Now that only applies at the court of appeals level. 2255 itself applies at the district court level and on appeal. But I think where there's a challenge to custody and there's been a grant of de novo resentencing that wipes the slate clean and that starts a new 20-year clock. And if I can transition... Is that true for accrual of interest as well? Yes. In other words, if that's vacated, then the accrual of interest gets wiped out. And I know my friends on the other side say that that's an odd scheme. But I don't know why it would be. If the restitution award is vacated and reimposed and a new 20-year clock starts, interest starts on that. Hasn't the Supreme Court in Kaiser and Wee and Lohman already said that that's not quite how it works with interest? That interest accrues from the entry of the initial restitutional order, the initial judgment? I would have to look, Your Honor. I believe that if there is a de novo resentencing and a new restitution judgment is being put in place, then interest would start on the date of that reentered judgment. If I'm wrong, I will certainly send in a letter correcting what I said. But if some restitution is paid before the new judgment with the new restitution award, there has to be credit given for the amount of restitution paid, right? You can't just say $20,000. Now it's again $20,000. That's got to be $20,000 minus what's previously been paid. And I suppose that how do you play the minus or the subtraction with interest? Do you say $20,000 minus the principal repaid? Is this like an amortization schedule that we're expecting on resentencing? That's a good question. I mean, certainly you get a credit for what you've paid in, all right? And you shouldn't pay more. And interest represents the time value of money. I have to think much more carefully about what... How big the credit needs to be. Right. And that's why I became a lawyer. So I didn't have to think about tough math questions. But I'll think about this more. I do want to just before transitioning to the ex post facto... You're on our time, as we're still in. About a reason. I didn't say it, but I mean, this court's remand in, you know, the first panel that sent it back to ask Judge Kubler to address two non-ex post facto... Two statutory means of addressing this turnover order without reaching the ex post facto clause. Means that, you know, the rule of constitutional avoidance may have some play here. I didn't cite to it in my brief. But I mean, the reason for looking at statutory ways to resolve claims is to avoid addressing constitutional issues. So I think, you know, that counsel is in favor of a construction that says that the reentry of the judgment, you know, starts in your 20 years. Or that the commencement of our action before the 20-year period. Ran out if we're limited to the version of 3613 that was in place when Mr. Norwood committed his crimes. Let's talk about your motion in a second. But in terms of which judgment we look to, I'm going to ask you to assume for current purposes that we in Lowman and the Supreme Court and Kaiser have held that interest begins to run from the judgment that sets out the legal basis for liability. If we have case law saying that the interest remains with the original judgment, what basis would there be, what textual basis or other argument might there be for interpreting judgment differently for the 20-year period than for interest? The best answer I can give you is that, as we know, and this is not just a creature of the NBRA, right? The Congress wanted aggressive enforcement of both fines and restitution once they were imposed. Even before the NBRA was enacted, the version of 3613 that we have here, I don't think it was a creature of the Victim Witness Protection Act. It was on the books in a different form. It's not, it was cross-referenced, right? In the Victim Witness Protection Act, it said, enforce restitution in the same manner as fines. And that version of 3613 that was in effect at that time was significantly beefed up around the time of the Sentencing Reform Act, right, to give the government the, they wanted to give the government, you know, summary levy powers. And that, you know, that was pulled back. So we can't act like the IRS. We couldn't go into Mr. Norwood's account and just take the money out. We had those, we were given a lot of powers. So to answer your question is, the purpose of the statute is to make victims whole, to put the government standing in the shoes of the victims, right, so that they can get recovery. And so I think every construction or every tool of interpretation should be, like, applied through that lens, that our goal here is to make restitution to innocent victims. As Dolan said, when, in a different context, interpreting the MVRA, and we shouldn't leave innocent victims uncompensated. But Congress also made that cross-reference in the VWPA, presumably because it viewed 20 years for someone to be exposed to debt as the outside limit at that time. And it fairly changed its use when it came around to passing new legislation. But we're looking at the original legislation, which does have that cross-reference. We assume it's deliberate. And after 20 years, it makes further enforcement of the lien. It's unenforceable by the terms of the statute. Correct. So if we take that literally and think that Congress here put an outside limit on this penal component of a sentence, what in the text would allow for it to be resurrected any time that there's an amendment to an aspect of judgment, especially where the amendment is not one that goes to the basis for restitutionary liability. It's not a change to the restitution. I agree. I mean, all I can do is point back to the text of 3613A, which shows that Congress knew that there was a potential for the judgment to be or the liability to be set aside. And that liability is part of a judgment. And so I think it still makes perfect sense when a defendant asks for a de novo resentencing. And I won't beat this drum too much, but at which he gets 127 months shaved off his sentence because he gets the benefit of the Booker remedy. Right. He should also get the burden of a new 20-year period starting at that time, before we even get to the ex post facto issue, whether there's even one raised by applying the MVRA. What would it be if there had been no request for a de novo sentencing? There had been no request? No request for de novo sentencing. It was just simply assumed by the district court that we're only here. Well, then I think your honor, then it would have been a limited resentencing. I think we would agree then that there had been no change to the judgment to restart that 20-year period. And we would be left only with our argument before we get to the MVRA, that our timely filing of a turnover motion, coupled with our administratively freezing the funds in Mr. Norwood's account, constituted sufficient compliance with the statute within the period to justify seizing those funds. So could this court in its 2013 order, could it have vacated and partially vacated and remanded for a limited resentencing? With respect to only term of incarceration for length of imprisonment, but left in place judgment, the default rule may be that everything is wiped clean, as you've said, but could this court in its discretion have just said, rather than wipe the whole slate clean, this was a challenge, Booker-based challenge, 127 months come off, just redo that part, rather than have to calculate an amortization schedule, which might be what was needed to offset the interest. This court could have done that, right? You aren't saying that 2255B says we could not do that, are you? No, I'm not saying that, but I, you know, when, and again, this is all, you know, there's a lot of egg on the case here, because I think in retrospect, and we said it in a brief, we mistakenly acquiesced in the de novo resentencing. So had we not done that, we wouldn't even be talking about this right now. You know, what Judge Irenas did originally in vacating the lesser included count and preserving everything else intact was fully within his discretion under 2255B, fully consistent with the case law. And since the sentences were concurrent on that, we could have opposed any relief, you know, on the concurrent sentence doctrine, because all he was getting back was his special assessment. So that's water over the dam, whatever the, you know, expression we want to use, but he got the de novo resentencing, and so here we are. Mr. Sanders, let me just test that a little bit, because in our remand order at Appendix 179, we didn't vacate the judgment, right? Exactly. That's, in fact, where I started today when I came up here. We vacated only the sentencing order. And when it went back, Judge Irenas altered the custodial components, but then said that all other conditions of the judgment of conviction entered in this matter shall remain in full force in effect. So what change does that actually affect to the pre-existing restitution component? Well, again, all I can say, Your Honor, is that the decretal portion of the order that was, that this court entered, the panel entered in January of, and that's the page I'm holding here, is that the order granting the summary action motion it grants the motion, but as, and it grants sort of the relief different than Mr., I mean, Mr. Norwood got what he wanted. He got the de novo resentencing, but he wasn't appealing the 2255 order, right? Because if he had been, I think we would have been jumping up and down and say he needs a COA to do that if he was complaining about the scope of his relief. But we didn't bother to do that because he filed the appeal in the criminal action. We decided wrongly in retrospect that he was right. He should get a de novo resentencing. And so I think it's a mistake in the drafting of this order that only refers to the sentencing order. But since this order was taken from the amended judgment that Judge Arvinas entered in the criminal case, it necessarily had the effect of vacating that amended judgment and all the sentences and all the components of the sentence. If you disagree with me, then that'll be the end of that part of our argument. Let's say we do get past that and we've got the issue of your motion and ex post facto to address. So when it comes to the timing of your motion, I take it the government concedes that the district court erred in its reliance on a statute that had, in fact, only come into play through the MVRA? Correct. Correct. The one that borrows a specific IRS provision. That's correct. And I'd have to say in all candor, if we could go back in the time machine to June of 2016, and then as time was elapsing towards that 20-year deadline, and we know now with the benefit of hindsight, I think what we would have done is we wouldn't have asked the district court to hurry up because we try not to do that, but I think we would have brought an order to show cause and asked the district judge to order the BOP to put those funds that were frozen in the custody of the court pending the outcome of the motion because in the VWPA version of 3613, that was in effect at that time, there is an IRS provision that's borrowed that says that that stops the running of the enforcement period when the funds are in the custody or control of the court. We didn't do that, so we don't have that available to us, but we did, short of that, I think what the best we thought we could do, which was to administer excretively freeze of funds and file that motion. We have a statute here that unlike the MVRA and unlike some of the other contexts to which you point us like parole or probation, they do have a consequence to running out of time and that is that the lien becomes unenforceable. That's correct. And to answer a question I heard before about whether it's statute limitations or statute proposed, I think even for a statute proposed, the only consequence that has is that there's no equitable tolling, but I think as long as you file an action before the statute of proposed expires, the action doesn't get dismissed. I take my friend's point that there are judgment enforcement statutes and decisions interpreting them in various states that say that if the judgment expires while a writ of execution is being sought to that, you lose your right to execute. And in those states, the remedy is you should renew your judgment before that time runs out. And in many states have a judgment renewal provision that wasn't available to us here. But so I will stick with my brief, the Dolan point, right? And the larger point I made before that the goal here is to make innocent victims whole. So we should, I think, bend over backwards to construe this statute to the extent we can, if you find that there are ex post facto concerns as authorizing what the district court did, but I'm fully prepared to get to the ex post facto point because I think this is, you know, I can list a parade of horribles and I know that's not a great way of arguing that would ensue if we were to accept this argument that lengthening out the time somehow increases the punishment, right? I mean, you can think of jails that are in a state that are notoriously easy to escape from. I think no one would say that if you enact legislation requiring higher walls, better locks on the jail cells, which is gonna create a much lower risk of escape, right? And that forces the defendant to serve out the full term of his or her custodial sentence, that that works in ex post facto violation. I don't think anybody would contend that if Congress or the BOP published in the federal register a notice that it was gonna require the U.S. attorney's offices or the BOP to make more periodic checks of inmate accounts or do property searches while a judgment of restitution of extent, that that would increase the risk of our being able to satisfy the judgment, right? Because we might find property that we wouldn't have otherwise looked for if we weren't told to do it on a more periodic basis, that that somehow would work in ex post facto violation. But isn't it really the period of the exposure to debt for this period that itself has a punitive aspect to it? Respectfully, I don't think so, Your Honor. And I think this calls into play, and I mean, this court's decision in Edwards, right, where it said that if you are calculating the imposition of restitution, right, you can't retroactively apply the NBRA's mandatory provisions, right? But this court was careful to say imposition, but this court in Edwards also said restitution has both punitive and compensatory aspects to it. And in the case following Edwards, and I alerted my adversary to this this morning, Christopher, this court said that when a defendant dies during the pendency of a direct appeal, right, the conviction abates and the indictment has to be dismissed, but if restitution has been imposed, the estate has to substitute itself in and continue prosecuting the appeal, because in that sense, restitution is compensatory. And the goal is to get the victim's money and not overturn that restitution judgment unless there was some error in imposing it. So I think the reason, I know that the decisions that we've cited in the brief, Blackwell, Phillips, and I think Rosello is the most on point, because timing-wise, it involves the exact same thing, a crime that was committed before the NBRA, but a conviction and sentencing afterwards. They are, I grant you, fairly short in their treatment of the ex post facto argument, but I think it's because they view enforcement as sort of the kind of, and I know procedural is not the right word, because procedural changes can work by ex post facto violations, but the very thing Justice Thomas was talking about in Morales, right? He said, if we accept this claim, then there's no end to the kinds of procedural changes or minor changes to schemes like the briefs or whatnot that might affect- This isn't a procedural substance distinction, right? We've dealt with that in Holmes, and where we're looking at an ex post facto claim, what we need to be looking at is the effect on the defendant, right? Yes. I mean, we're stuck with the substantial risk or substantial probability test that was what was applied in Pew most recently. Why isn't it the case, as Mr. Clark was arguing, that if you have, say, someone whose wages are being garnished, making minimum wage, wages being garnished for some small amount, and that that goes on for 20 years, and then the government comes along and says, I'm going to extend that out for another 25 years, doesn't that change in terms of the effect on the defendant? Isn't that an increase in the punishment for that defendant? I respectfully know, Your Honor, and again, as Judge Stern said when my friend was up here, the amount that's been set is not being changed. In fact, this amount of restitution was set, and it was due immediately in all the judgments that we have. So, sorry to interrupt, but this is kind of impossible, I think, under current regime, but let's just suppose that a sentence in court said, I'm going to send you, your term of imprisonment is 240 months. That happens to just beautifully correspond to the 20-year period for restitution. You know, instead of breaking this down in terms of total restitution amount, I'd like you to pay $25 a month for the entire length of your incarceration. And then there was, then for some reason, the Congress passed a statute and said, no, you can extend that payment period for five years after release. That would be an ex post facto problem, right? I don't know if it would be. I mean, I thought your hypothetical is going to run the other way, that they pass a statute that speeds up the payments during that period, and I don't know, I don't think anybody would have a problem with that, right? If the payment that's been ordered. Yeah, he could prepay. If he wanted to prepay, he or she wanted to prepay, they could. But I think the question would be, what if they said, hey, just Congress says five more years. That would be punitive, because that was not part of the original sentence. The original sentence, you could find out what it was. It was $25 a month for 240 months, and now we're going to add another, what, 60 months to that. That's punitive. Well, I guess I'd have to know the context in which it's arising, not just applying to this defendant, right? In other words, is the statute altering another statute that already has a payment schedule in it? And the reason I ask that is, again, when the restitution amount is fixed at the outset, right? And again, I will go to the statute of limitations analogy, right? A defendant, someone who's committed a crime, right, under the laws that exist in this circuit, and sort of by negative implication in Stagner, right, who isn't charged but could face years in prison, Congress can come along before that, the day before that statute runs out and extend that statute of limitations by 10, 15 years. And that person is exposed to potential prosecution and potentially years in prison. And if that doesn't work, an exposed fact of violation, and I don't know why in this situation, lengthening out the period of collecting an already imposed, right, amount, right? But the amount wasn't fixed. And so the reason I ask is, are we supposed to look at punishment from a functional perspective? And if we are, then functionally extending this time period when it's paid for monthly installments does increase the amount that would otherwise be paid. If we don't look at it quite so functionally and say there's liability for some certain plus interest, then it might not be punitive. But I guess what I'm saying is, I think at least the adding in that kind of somewhat strange hypothetical, but might be how a prisoner would view it just the same, right? Because it's the same amount coming out each month. They don't really care what the fixed amount is. They're just hoping to hit their deadline of when it's no longer due. It strikes me that then the lens through which we look at it really determines whether it's punishment or not. And the more functional that we would look at it, as it would be an extension of an additional five years of $25 a month, the more punitive it gets. The more that we look at it as an initial amount that is intended to make the victims whole, then the more that it feels like, no, it feels more like the compensatory, not the punitive components of restitution. And I take your point. And I think that's why I sort of step back and look at Edwards and Christopher, that there may be a way to, and some circuits don't even apply to ex post facto cost restitution that should have failed in this circuit. But that doesn't prevent this court from saying imposition of the amount. Yes, the NBRA, because it's more onerous than the VWPA, you can't retroactively apply that. Mr. Nord got the benefit of that ex post facto ruling because the VWPA was applied in calculating his amount. He's always complained about that it wasn't calculated correctly, but that should have failed too. But I think in terms of judgment enforcement, it has a much more compensatory aspect to it that's not punitive. And when it's done to make the victims whole, and sure, Congress understood when it extended this period, the reason it did that is because a lot of defendants who got the longer sentences, right? And then came in and then got out and managed to get a job and get money. Then we're in a position to start paying their restitution back. Those people were escaping the restitution that they were owed under the original scheme. How can we recharacterize it like that? When we have case law that says that restitution, that's when it's part of a criminal sentence, it's punitive. Because you've said that in the context of the imposition. I think Edwards is very clear about that. I think it was said to Randall's opinion from 1998. I think he uses that term twice, the imposition restitution. I don't think it settles the question for all purposes. And when you look at the 11th Circuit's opinion in Rosello, right? The defendant there made the same argument in the 11th Circuit. I think they have Siegel, which is the equivalent of Edwards in this circuit. And the panel in Rosello said just because we've held that ex post facto clause prevents retroactive application of the MVRA in setting restitution, doesn't mean that it's in for a penny and for a pound. And they said that the extension of the period there was just like the extension of the statute of limitations of an uninspired period and therefore did not violate the ex post facto clause. Except that we're looking now at post conviction and a criminal sentence, not charges that have not yet been brought. No, I agree. But in Rosello, it's the exact same procedural posture, right? It's a defendant who committed crime before the MVRA was enacted, but was convicted and sentenced afterwards. And so that defendant also, I believe got the benefit of the BWPA in setting the restitution amount, but the government wanted to enforce that restitution obligation beyond the initial 20 year period. That was in effect when he committed his crimes. And the 11th Circuit said, there's no ex post facto problem in applying the longer 20 year period, meaning 20 years from release from prison that came into effect with the MVRA. But that's the question before us. Agreed. We had talked briefly about how ex post facto really goes back to a matter of notice, right? At the time you commit a crime, something of a fiction perhaps, but maybe we can bring that into more sharp relief by thinking about it at the time of say, taking a guilty plea or making the assessment about a risk of going to trial. Shouldn't we consider the extent to which a defendant in thinking about what sentence he or she would be accepting is thinking out, you know, that at the end of the statute that I'm to be sentenced under says 20 years, at the end of 20 years, whatever I paid to that point, this cloud that's hanging over me, garnishment, you know, or the like, it ends. And from that point, I can move on with a clean slate. To the extent that that realistically could be part of the way a defendant is thinking about the sentence that they face, doesn't the retroactive extension of that period undermine the notice concerns that inform ex post facto law? I don't think it does, Your Honor, for two reasons. Number one, I've already gone over the extension of the statute of limitations for prosecution is not considered to be, to work an ex post facto violation as long as that period hasn't expired. But the other reason is, and it's somewhat, maybe more ethereal, but I mean a defendant who commits a crime that causes loss to a victim faces also a private action for damages by that victim. And that victim can pursue the defendant, right, under state, under whether it's federal court or state court, but has state enforcement procedures available to him or her. And those people can renew their judgments. The United States can't under this, at least under the EWPA version, right? That cut off the government's ability to enforce the restitution obligation. I don't think it cuts off a victim's to enforce that judgment to the extent they haven't been made whole. And so the defendant is always going to face that threat whether the government has recovered the debt for the victim or not. And finally, to the extent you have thought about it or had the opportunity yet to research it, the collateral consequences that go along with that outstanding restitutionary liability, how should we think about that in connection with the extension of the period of outstanding restitution? It's not something I've thought enough to speak intelligently here at arguments. So I too would welcome the opportunity to brief it. But I think that if the test is substantial risk, then I, you know, my gut reaction would be that that may be too far out in the future or too ethereal to satisfy what is this aspect of the Calder versus Bull at this third category that we've been discussing here, right? The substantial risk of increased punishment. Does adding a term or condition to a supervised release constitute additional punishment? Adding a term. That's a good question. I mean, it's a condition, right? The violation of which is what lands you in trouble. But I believe, and I don't have it handy, whether the most recent judgment provided for Mr. Norwood to make restitution or the condition of his supervised release as well. I can certainly tell you, and I forgot to say this earlier, it required him to notify the court when he came into possession of substantial assets. And he didn't do that. So that answers some of the complaint that this was a last minute thing. We programmatically checked lots of DOP accounts at or around 2016 and discovered this money. And I know we've been long over time. Can I make one final point? And it's just an interesting thing that struck me. Neither Mr. Norwood nor Mikas, as far as I can tell, complain about the fact that we used the 364N turnover motion procedure to move for these funds. I find that significant because that's only an advent of the NVRA. That did not exist at the time of the Victim Witness Protection Act. And so, it's oddly, they have no problem with our moving to the extent that it made it easier to seize the funds and to exact payment. Well, to me, now that you've alerted them to it. Well, but I'm, right, I mean, so, but it just shows that the ex post facto, there is no in for a penny and for a pound thing, going back to the Edwards point, right? It may be that imposition of restitution is punitive, but collection is a different matter for ex post facto purposes. Thank you very much for indulging me. And we ask you to affirm. Mr. Clark, the floor is yours. I just have two points on the ex post facto clause, and then I'd like to clarify our position on the effect of this court's remand order in 2013. On the 3664N point, the government motioned the district court under 3613A and 3664N. I'm not sure if that was 3613A of the VWPA, but as for significant risk, I think the government's, or my friend on the other side's, parade of horribles is answered by the significant risk standard itself. It is often difficult to prove that a retroactive application from a penal statute causally increases punishment. And so this case is somewhat unique in that the retroactive application of section 3613B, we know will subject the funds at issue in the motion to collection. In many cases, including the parole context, it's difficult to ascertain whether a retroactively applied change in the law will actually increase punishment. And so most of the potential consequences of this interpretation, I think would not make out a valid ex post facto claim under that standard. I would also like to emphasize to your point, Judge Krause, that in many cases, a restitution order will be one of the more significant components of a defendant's sentence, particularly where a defendant is sentenced to probation or a small prison term. And so I think one of the key things that does differentiate section 3613B from a statute of limitations is it very well may affect plea bargaining and trial strategy. A defendant may be far less likely to accept a large restitution judgment if he knows that he'll be subjected to it for 20, under the NVRA period. And on the 2013 remand order, your honors, our position is essentially that this court did not vacate Mr. Norwood's sentence. It merely vacated the sentencing order. And that order, I see that amount of time may I briefly conclude, that sentencing order merely dismissed count one. And so our position is that by vacating the order and not specifically taking action with respect to Mr. Norwood's entire judgment, it essentially restored him to the position he occupied before. And so he, at that time, we would maintain had a restitution order. He was subjected to a lien. And for all of the reasons that I've expressed today, I think the order of the district court below should be reversed. All right. We thank both counsel for that argument. And your stamina and patience with a long morning or afternoon at this point, as the case may be. And special thanks to Duke and the law school for this important endeavor that you have taken for the professional development of our young lawyers. Thank you both.